# EXHIBIT M

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

RECOR MEDICAL, INC. and
OTSUKA MEDICAL DEVICES CO., LTD.,
Petitioner,

v.

MEDTRONIC IRELAND
MANUFACTURING UNLIMITED CO.,
Patent Owner.
_____

IPR2022-00431
Patent 8,845,629 B2
_____

Before WILLIAM V. SAINDON, ERIC C. JESCHKE, and
ALYSSA A. FINAMORE, *Administrative Patent Judges*.

JESCHKE, *Administrative Patent Judge*.

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

Patent Owner also provides the following annotated version of a portion of Figure 1 of Acker:



Prelim. Resp. 66. In the annotated portion of Figure 1, Patent Owner added green highlighting to a portion of catheter body 40 and red highlighting to a portion of rigid base 32. *Id*. Referring to this annotated portion of Figure 1, Patent Owner argues that, "[a]s demonstrated by the visible red region between the shaft of Acker's catheter (green) and the bottom surface 30 of the transducer, Acker's rigid base (red) separates the ultrasound transducer (i.e., the piezoelectrode layers 22, 24 and electrodes 26, 28, and 30) from the catheter." *Id*. (citing Pet. 47–48). According to Patent Owner, Petitioner "do[es] not explain how the 'mounted' element of Acker meets or renders obvious" the positioning limitation. *Id*.

At this stage of the proceeding and on the current record, we determine, as discussed below, that Petitioner has made a sufficient showing that Acker discloses the positioning limitation. Petitioner identifies the "emitting element" disclosed in Acker as the "ultrasound transducer" recited in the positioning limitation. Pet. 48 (citing Ex. 1005, 4:12–14). In the

passage cited and quoted by Petitioner, Acker discloses: "The emitting element discussed above desirable is mounted on an elongated catheter body 40 having a proximal end 42 and a distal end 44." Ex. 1005, 4:12–14, *quoted at* Pet. 48. At this stage of the proceeding, we understand the phrase "[t]he emitting element discussed above" as a reference to "polymeric piezoelectric element 10" discussed, for example, at column 3, lines 22–67 of Acker. In that passage of column 3, Acker interchangeably refers to "piezoelectric element 10" as a "transducer": first discussing "piezoelectric element 10," then discussing "[t]he particular transducer" in Figure 1, then combining those descriptions, referring to "the piezoelectric transducer." *See, e.g.*, Ex. 1005, 3:38, 3:44, 3:54–55. Petitioner's assertion that the "emitting element" in Acker would have been understood as an "ultrasonic transducer" (as recited in the positioning limitation) is also supported by the Daft Declaration. *See* Daft Decl. ¶ 139, *cited at* Pet. 48. And Acker expressly states that the identified "emitting element" is "mounted on an elongated catheter body 40," as shown in Figure 1. *See* Ex. 1005, 4:12–14. Based on the current record, including the parties' arguments thus far, we view "mounted on" as satisfying the requirement to be "positioned on."

In its argument, Patent Owner excludes rigid base 32 from the disclosed "transducer," but the passage quoted by Patent Owner (and reproduced above) does not support that understanding. Specifically, the passage at issue describes the "transducer" as "incorporating" various layers and discloses that the "layers" are "superposed on a rigid base 32." Ex. 1005, 3:44–49. It does not, however, describe the "transducer" *itself* as "superposed on a rigid base 32" (which would support the view that rigid base 32 is not part of the "transducer"). *See id*. For these reasons, on the