UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RECOR MEDICAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC IRELAND MANUFACTURING UNLIMITED CO., et al.,<br><br>Defendants. | Case No. 22-cv-03072-TLT   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 122 |

We are here on Recor's motion to compel concerning Symplicity treatment outcomes and Covidien's OneShot renal denervation system. ECF No. 122. The Court held a hearing on March 28, 2025, and now issues the following order.

**A.    Symplicity Treatment Outcomes**

Recor moves to compel documents and information concerning treatment outcomes for Medtronic's Symplicity System, including its previous-generation Symplicity in 2014 and current-generation Symplicity Spyral in 2022. Specifically, Recor seeks:

1. RFP No. 66: "[d]ocuments that refer or relate to wholly or partially unsuccessful or ineffective treatments using Symplicity; failures of or complications in using the generator, catheter, or other components in connection with a treatment using Symplicity; adverse patient effects, results, or outcomes in connection with a treatment using Symplicity; and any other wholly or partially adverse, negative, unsuccessful, or ineffective result, outcome, or effect in

1  connection with a treatment using Symplicity." Ex. A at 1.

2      2. RFP No. 67: "[d]ocuments that refer or relate to complaints by patients or customers relating to Symplicity or in connection with a treatment involving Symplicity." *Id*.

4      3. RFP No. 68: "[d]ocuments that refer or relate to any design changes, product failures, or quality issues for Symplicity." *Id* at 2.

6      4. Interrogatory No. 16: "all facts and circumstances regarding Medtronic's Global SYMPLICITY Registry and the HTN and SPYRAL HTN clinical programs, including any procedural or clinical failures and decline in the number of procedures over time; identify all documents that show or reflect the information in your response; and identify the three persons most knowledgeable about the subject matter of this interrogatory." Ex. B at 3.

11      5. Heidrun Behrmann (Dir. of Training and Education for renal denervation) email term: "Symplicity AND (complain* OR adverse OR fail*)." Ex. C (highlight added).

13      6. Julie Trudel (R&D for Symplicity) email term: "Renal AND (stenosis OR injur* OR dissection OR ((fail OR unable OR inability) w/5 ablat*))." Ex. C (highlight added).

15      7. Rule 30(b)(6) Topic 71: "[a]ny product failures or customer, consumer, or patient complaints regarding the operation, efficacy, quality, or safety of the Symplicity System." Ex. D at 16.

**1.  Relevance**

The requested discovery generally relates to the quality of Medtronic's Symplicity, which is a relevant subject for several reasons. Recor says that aside from its Paradise product (which is the accused product), Medtronic's Symplicity is the only other FDA-approved renal-denervation system on the market. With respect to Medtronic's reasonable royalty damages, if Paradise's commercial success is due to the use of the patented technology, that would support a higher reasonable royalty, but evidence that Paradise's commercial success was due to the low quality of the only available alternative would support a lower reasonable royalty. *See Fresnius Medical Care Holdings, Inc. v. Baxter Int'l.*, 2006 WL 1646113, *1 (N.D. Cal. June 12, 2006) ("Evidence of machine recalls [by Baxter] tends to show that Fresenius's success in selling its 2008K machines was due to factors such as perceived differential in hemodialysis product quality

between Baxter and Fresenius, rather than the patented technology."). In addition, "[l]icense agreements have historically included provisions for adjusting royalty rates. Quality control problems of a competitor-licensor [are] likely to lead the licensee to re-negotiate for a lower royalty rate over the term of the hypothetical license." *Id*. at *2. The *Georgia-Pacific* factors also include "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" and "the benefits to those who have used the invention." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). That inquiry encompasses a realistic comparison of the patented invention against the available alternatives, which here is Symplicity.

In addition, Medtronic seeks lost profits damages. This requires Medtronic to prove that but-for Recor's allegedly infringing product, Medtronic would have sold more of its product, including how much more. Evidence of the quality of Medtronic's product is relevant to that inquiry. Medtronic is wrong that as long as the parties' products generally compete with each other, every other difference between them is per se irrelevant to the lost profits inquiry. First, "the mere existence of a competing device does not make that device an acceptable substitute." *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012) (citation omitted). "[P]roducts lacking the advantages of the patented invention," as is the case with Medtronic's Symplicity, which does not practice the patents asserted in this lawsuit, "can hardly be termed a substitute acceptable to the customer who wants those advantages." *Id*. (citation omitted). Whether the patentee's competing product is an adequate substitute for the allegedly infringing product depends on what "[t]he record shows." *Id*. This warrants discovery into the quality of Medtronic's product.

Second, lost profits have to be quantified. Differences between the products, such as price or quality, can be relevant to how much of the sales of the allegedly infringing product would have been captured by the patentee's competing product in the but-for world. For example, in *Akamai Technologies, Inc. v. Limelight Networks*, 805 F.3d 1368, 1380-81 (Fed. Cir. 2015), the Federal Circuit upheld a damages award where the expert did not simplistically assume that each infringing sale would have been replaced by a sale by the patentee but instead took into account

3

the 100% price disparity between the two products and concluded that the patentee would not have fully captured the infringing sales. *See id*. at 1380 ("Second, because of the difference in price between Akamai's product and Limelight's product, Dr. Ugone assumed that the demand for Akamai's product would be 25% less than the demand for Limelight's infringing products.").

Like price, quality is a factor that is relevant to how much of Recor's sales would have been captured by Medtronic in the but-for world. *See BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) ("If the products are not sufficiently similar to compete in the same market for the same customers, the infringer's customers would not necessarily transfer their demand to the patent owner's product in the absence of the infringer's product."). Medtronic's expert will have to quantify what Medtronic's sales would have been in the but-for world, and significant differences in quality between the two sides' products (or the absence of such differences) may make that expert opinion more or less persuasive. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019) ("To be sure," differences between the two products "may be relevant to the computation of lost profits.") (emphasis omitted); *cf. Pelican International, Inc. v. Hobie Cat Co.*, 655 F. Supp 3d 1002, 1040 (S.D. Cal. 2023) ("the price disparity" between the products "go[es] to the weight" of the expert opinion).

### 2. Proportionality and Burden

With respect to the search terms for Heidrun Behrmann and Julie Trudel, those seem pretty straightforward, and Medtronic does not argue burden. Accordingly, the Court **ORDERS** Medtronic to use those search terms.

With respect to interrogatory 16, Medtronic objects to the request for "all facts and circumstances." The Court agrees, and **ORDERS** Medtronic to answer the interrogatory with respect to the principal or primary facts and circumstances.

The remaining issues (the requests for production and topic 71 in the Rule 30(b)(6) deposition notice) are all related. At the hearing, Medtronic argued that this discovery was an all-or-nothing proposition, meaning that granting the motion to compel would require a company-wide search to find absolutely every responsive document. Medtronic also argued that it knew of

1   no way to craft search terms to locate responsive documents.

2         The Court rejects those arguments. Instead, the Court **ORDERS** Medtronic to propose to
3   Recor search terms that Medtronic will use to locate documents responsive to RFPs 66, 67 68 (and
4   thus to obtain the information that will enable it to respond to topic 71) in the custodial files of
5   custodians likely to have responsive documents. Because this motion to compel was filed so close
6   to the end of fact discovery, *see* ECF No. 96, Medtronic should do this only for custodians it has
7   already identified. The parties should then meet and confer on the search terms and custodians,
8   and if they are not able to reach an agreement, they shall file a further joint discovery letter brief
9   by April 4, 2025. The Court also **ORDERS** Medtronic to propose to Recor non-custodial sources
10  in which it will conduct reasonable searches for responsive documents, and how it will do those
11  searches. The parties should then meet and confer concerning those matters, and if they are not
12  able to reach an agreement on the non-custodial sources, they shall file a further joint discovery
13  letter brief by April 4, 2025. The point of these searches of custodial and non-custodial sources is
14  not to find every responsive document, but for Medtronic to conduct a reasonable and proportional
15  search for responsive documents.

16        Accordingly, Recor's motion to compel concerning Symplicity treatment outcomes is
17  **GRANTED** as stated above.

18  **B.     Covidien's OneShot Renal Denervation System**

19        This part of the motion to compel isn't compelling. Recor says this discovery is relevant to
20  enablement and damages.

21        As to enablement, Recor says it wants to learn if Covidien tested embodiments of the
22  Asserted Patents, and if so, whether they worked. The requested documents would be relevant to
23  enablement only if Covidien was in fact trying to practice the Asserted Patents. If it wasn't, then
24  all of the requested documents have simply nothing to do with enablement. Here, Recor offers no
25  reason to think Covidien was trying to practice the Asserted Patents. This makes the relevance of
26  the requested discovery completely speculative.

27        As to damages, given that OneShot was never commercialized in the United States, Recor
28  has offered no coherent explanation for how the requested documents are relevant to damages.

5

Accordingly, Recor's motion to compel as to the Covidien OneShot renal denervation system is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 31, 2025

THOMAS S. HIXSON
United States Magistrate Judge