UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RECOR MEDICAL, INC.,

Plaintiff,

v.

MEDTRONIC IRELAND MANUFACTURING UNLIMITED CO., et al.,

Defendants.

Case No.  22-cv-03072-TLT

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR JOINDER**

Re: ECF 139, 144

Before the Court are two motions: (1) Defendant and Counterclaim-Plaintiff Medtronic Ireland Manufacturing Unlimited Co. ("Medtronic Ireland"), Defendant Medtronic Vascular, Inc., and Defendant Medtronic, Inc. (collectively "Medtronic")'s motion for joinder under Federal Rule of Civil Procedure 19, ECF 139, and (2) Plaintiff and Counterclaim-Defendant Recor Medical, Inc. ("Recor")'s motion to dismiss Medtronic Ireland's counterclaims for lack of Article III standing, ECF 144.  The resolution of these motions turns on the exchange of exclusionary rights in the Exclusive License Agreement ("ELA") entered in April 2023 between Medtronic Ireland and Medtronic Vascular Galway Unlimited Company ("Medtronic Galway").

After review and consideration of motions, briefings, attachments and exhibits thereto, the Court **GRANTS** the motion to dismiss Medtronic Ireland's counterclaims without prejudice, **DISMISSES** Recor's declaratory claims without prejudice, and **DENIES** motion for joinder as moot.

## I.    BACKGROUND

On May 25, 2022, Plaintiff and Counterclaim-Defendant Recor commenced this action against Medtronic Ireland and Medtronic Vascular, seeking a declaration that Defendant and Counterclaim-Plaintiff Medtronic Ireland's U.S. Patent No. 8,845,629 ("the '629 patent") is

invalid and not infringed by Recor's Paradise Ultrasound Renal Denervation System ("Paradise System"). ECF 1. On that same day, Recor filed a Notice of Automatic Stay of this case in view of Recor's Petition for Inter Partes Review ("IPR") of the '629 patent, filed on January 13, 2022. ECF 10. The Court stayed the matter pending the IPR proceedings. ECF 14. On July 14, 2023, the Patent Trial and Appeal Board ("PTAB") issued a Final Written Decision rejecting the grounds of invalidity in Recor's IPR petition.

On November 8, 2023, Medtronic Ireland asserted counterclaims alleging that the Paradise System infringes the '629 patent and Medtronic's U.S. Patent No. 11,801,085 ("the '085 patent") ("Asserted Patents"), thereby lifting the stay of this case. ECF 23, 24. On December 29, 2023, Recor asserted counterclaims against Medtronic Ireland and Medtronic, Inc. seeking a declaration that the '085 patent is invalid and not infringed by the Paradise System. ECF 35. Medtronic Ireland and Medtronic, Inc. answered those claims on February 12, 2024. ECF 47. By joint stipulation, on June 3, 2024, Medtronic Ireland amended its counterclaims to add allegations of willful infringement of the '085 patent, and the Medtronic Defendants amended their Answers to include affirmative defenses of equitable, IPR, collateral, and judicial estoppel. ECF 62, 63, 64.

Medtronic Ireland is the owner of the Asserted Patents. *See* ECF 23-6, 23-10. Asserted Patents relate to systems and methods for renal denervation—the process of damaging the nerves surrounding the renal arteries—to treat hypertension. ECF 106, at 2. In April 2023, Medtronic Ireland, the licensor, entered into an ELA with Medtronic Galway, the licensee. ECF 139-2, Exhibit ("Ex.") A. The ELA was entered seven months before Medtronic Ireland filed its counterclaims. *See* ECF 23 (filed on November 8, 2023). In February 2025, Medtronic Ireland revealed for the first time the existence of the ELA and the need to introduce Medtronic Galway to the action.

On April 22, 2025, Medtronic Ireland filed a motion for joinder, seeking to join Medtronic Galway under Federal Rule of Civil Procedure 19. ECF 139. Recor filed an opposition, ECF 145, and Medtronic Ireland filed a reply, ECF 152.

While the parties briefed the motion for joinder, on May 6, 2025, Recor filed a motion to dismiss Medtronic Ireland's counterclaims, asserting Medtronic Ireland lacks Article III standing

to assert its counterclaims. ECF 144. Medtronic Ireland filed an opposition, ECF 153, and Recor filed a reply, ECF 164. The Court heard oral argument on July 1, 2025.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a claim based on subject matter jurisdiction, including a lack of standing. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). "On a motion to dismiss for a lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Id.* (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)). The party asserting federal subject matter jurisdiction bears the burden of establishing that it is present. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"The constitutional minimum of standing" requires three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff must prove that "an injury-in-fact, *i.e.*, a concrete and particularized, actual or imminent invasion of a legally protected interest." *Id.* at 555. Second, there must be a "causal connection" between the injury and the conduct. *Id.* at 560. The injury must be "traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Finally, the plaintiff must show that the injury "will likely be redressed by a favorable decision." *Chandler*, 598 F.3d at 1122.

To establish an injury in fact, the plaintiff must show that both that the injury is particularized and that it is concrete. *Lujan*, 504 U.S., at 560. For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). For the injury to be concrete, it must actually exist. *Id.* at 340 (internal citations omitted).

### B.    Joinder

"There is no precise formula for determining whether a particular nonparty should be joined" under Federal Rule of Civil Procedure 19, and "[t]he determination is heavily influenced by the facts and circumstances of each case." *Bakia v. L.A. Cnty. of State of Cal.*, 687 F.2d 299,

United States District Court
Northern District of California

3

301 (9th Cir. 1982).  Even so, district courts have applied a three-step inquiry to evaluate joinder requests under Federal Rule of Civil Procedure 19:

> 1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
>
> 2. If so, is it feasible to order that the absent party be joined?
>
> 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citation omitted).  Courts enjoy "considerable discretion" in answering these questions.  *See Bakia*, 687 F.2d at 301.  If a court determines that a non-party is not necessary at Question One, it need not answer Questions Two or Three.  *See t'Bear v. Forman*, No. 17-cv-00796-JSC, 2020 WL 703888, at *3 (N.D. Cal. Feb. 12, 2020).  The party seeking joinder under Rule 19 bears the burden of persuasion.  *See Est. of Vela v. Cnty. of Monterey*, No. 16-cv-02375-BLF, 2018 WL 1510213, at *3 (N.D. Cal. Mar. 27, 2018); *Desoto Cab Co. v. Picker*, 196 F. Supp. 3d 1107, 1118–19 (N.D. Cal. 2016).

## III.    DISCUSSION

### A.    Motion to Dismiss

Recor contends that Medtronic Ireland lacks Article III standing to assert its infringement counterclaims because it had relinquished all exclusionary rights under the Asserted Patents to Medtronic Galway at the time it brought its counterclaims.  ECF 144, at 2.  Medtronic Ireland counters that it has Article III standing because under the ELA, it retained some exclusionary rights including the right to sue for patent infringement.  ECF 153, at 1.

"To establish constitutional standing under the case-or-controversy requirement of Article III, a plaintiff must demonstrate that it has suffered an 'injury in fact.' "  *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021) (citations omitted).  A patent grants "exclusionary rights."  *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).  These "exclusionary rights" "involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.' "  *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed.

United States District Court
Northern District of California

Cir. 2019) (quoting *Morrow*, 499 F.3d at 1342). Thus, "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has *an* exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Univ. of S. Fla.*, 19 F.4th at 1323 (emphasis added); *see also Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir.), *cert. denied*, 145 S. Ct. 568 (2024) ("[T]he question for the injury-in-fact threshold is whether a party has *an* exclusionary right.") (emphasis in original). A party asserting a patent infringement claim must have standing to sue on the date it files its claim. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.").

Medtronic Ireland, as the patent owner, has "exclusionary rights as a baseline matter unless it has transferred all exclusionary rights away." *Zebra*, 101 F.4th at 816. The parties dispute whether the ELA transferred all of Medtronic Ireland's exclusionary rights in the Asserted Patents. Turning to the ELA, it is undisputed that the ELA grants Medtronic Galway some exclusionary rights. *See* ECF 139-2, Ex. A, §§ 2.1, 2.2, 2.4, 2.5. Because Article III standing requires retention of an exclusionary right, the Court will focus on rights retained by Medtronic Ireland.

The ELA recognizes Medtronic Ireland's continued ownership in the Asserted Patents and their improvements. *Id.* §§ 9.1, 9.3. While Medtronic Galway has the exclusive right to sublicense patent rights, this right is subject to Medtronic Ireland's written consent which will not be unreasonably withheld. *Id.* §§ 2.4, 2.5. Medtronic Galway must pay Medtronic Ireland royalties. *Id.* § 6.1. The ELA provides Medtronic Ireland a right to sue third parties for infringement if Medtronic Galway declines to or fails to do so in a reasonable time. *Id.* § 3.6. In the event of a material breach, Medtronic Ireland has the right to terminate the ELA. *Id.* § 10.2–3. The ELA is set to expire at a set future date at which time all patent rights will revert to Medtronic Ireland. *Id.* § 10.1. The crux of the dispute comes down to whether any of these retained rights are sufficient to establish Article III standing.

The parties first dispute whether Medtronic's Ireland secondary right to sue is sufficient to establish an exclusionary right. *See* ECF 144, at 5–6; ECF 153, at 8–13; ECF 164, at 2–6. The parties next dispute whether Medtronic Ireland retains any other exclusionary rights, focusing on

United States District Court
Northern District of California

5

United States District Court
Northern District of California

its right to withhold consent to sublicenses.  ECF 144, at 6–8; ECF 153, at 13–14; ECF 164, at 7–9.  The Court will address each argument in turn.

**1.  Medtronic Ireland's secondary right to sue is not an exclusionary right.**

Recor contends that Medtronic Ireland's right to sue under Section 3.6 is not an exclusionary right sufficient to establish constitutional standing.  ECF 144, at 5.  Recor relies on two cases.  *Id.* at 5–6.

In *Morrow*, the Federal Circuit addressed the parties' respective rights to sue after a bankruptcy court partitioned out the rights in the patent.  *Morrow*, 499 F.3d at 1338.  Plaintiff GUCLT held "the right to sue parties" but did not have the right to "grant exclusive and non-exclusive licenses [and] grant the right to sublicence."  *Id.* at 1341.  The court then determined whether this right was sufficient for GUCLT to establish constitutional and prudential standing.  *Id.*  The court found that, in this case, "the exclusionary rights had been separated from the right to sue for infringement."  *Id.* at 1342.  "For any suit that GUCLT brings, its grievance is that the exclusionary interests held by AHLT are being violated[;] . . . GUCLT suffers no legal injury in fact to the patent's exclusionary rights."  *Id.*  Because GUCLT—despite having a "right to sue"—lacked "an exclusive license, the exclusive right to license, and the right to sublicense," the Court found that it lacked constitutional standing to assert its infringement claims.  *Id.* at 1341–42.

In *Zydex*, the district court applied *Morrow* to the licensor-licensee context.  *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, No. 1:24-363-JPM, 2024 WL 5276676, at *5 (D. Del. Nov. 25, 2024).  Plaintiffs asserted that it retained a right to sue for infringement sufficient to confer standing.  *Id.*  The licensing agreement provided that if the parties identified an infringing third party, then they must cooperatively conduct legal action, and if either the licensor or licensee declined to pursue, then the other could pursue legal action on its own.  *Id.*  The court found that like in *Morrow*, the licensee's exclusive right to exclude was contractually separated from Plaintiffs' right to participate in litigation.  *Id.*  The court held that "the ability to bring or participate in infringement litigation is not an exclusionary right which confers on Plaintiffs constitutional standing."  *Id.*

6

United States District Court
Northern District of California

Recor argues that like in *Morrow* and *Zydex*, Medtronic Ireland's right to sue is contractually separated from Medtronic Galway's exclusive right to exclude. ECF 164, at 7. Further, Medtronic Ireland's right to sue mirrors the right to sue in *Zydex*. Medtronic Ireland may sue only if Medtronic Galway declines to or fails to do so in a reasonable time. ECF 139-2, Ex. A, § 3.6. In *Zydex*, if the licensee declined to sue, plaintiffs could sue independently, but the licensee retained the right to exclude and was not obligated to transfer the right to plaintiffs. *Zydex*, 2024 WL 5276676, at *6. The court found that because plaintiffs' asserted exclusionary right to sue "would depend on [the l]icensee's [exclusionary right], [plaintiff's exclusionary rights] d[id] not exist on their own." *Id.* Similarly, here, Medtronic Ireland's right to sue depends on Medtronic Galway's exclusionary rights.

Medtronic Ireland asserts several counterarguments against Recor's reliance on *Morrow* and *Zydex*. Medtronic Ireland argues that *Morrow* improperly melded the injury-in-fact inquiry with the § 281 inquiry, did not involve a license agreement, and GULCT did not have ownership rights over the patent. ECF 153, at 11. These arguments are unpersuasive. *Morrow* is not a case that is identified to have confused constitutional and statutory standing, *see generally Zebra*, 101 F.4th 807, and its injury-in-fact analysis focused on the constitutional standing inquiry— separating it from the prudential standing inquiry, *see Morrow*, 499 F.3d at 1344 ("Joining the legal title holder only satisfies prudential standing requirements. It cannot cure constitutional standing deficiencies."). Likewise, the bankruptcy posture and the ownership rights over the patent are immaterial to the Federal Circuit's standing analysis in *Morrow*. The Court finds *Morrow*'s analysis to be persuasive.

Medtronic Ireland also argues that the right to sue in *Zydex* is weaker than its right to sue here, *Zydex* is not controlling, and its pending appeal suggests that its analysis is in serious question. ECF 153, at 11–12. The Court finds these arguments to be unpersuasive. The right to sue in *Zydex* is sufficiently similar—and at least instructive—to provide an example of an application of *Morrow* in the licensor-licensee context.

Medtronic Ireland heavily relies on *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010). In *Mann*, the Federal Circuit looked to a

7

licensing agreement between the Alfred E. Mann Foundation for Scientific Research ("AMF") and Advanced Bionics ("AB") to determine whether AMF was owner of the patent-in-suit, retaining substantial rights in the patents-in-suit, including the right to sue for infringement if AB declines to do so. *Mann*, 604 F.3d at 1356. Under the agreement, both AMF and AB were required "to notify the other party upon learning of a possible infringement of the patents." *Id.* at 1361. After notification, AB retained the right to decide whether to sue for infringement. *Id.* While AB retained final say on all litigation decisions, AB had to keep AMF informed, AMF could participate in the litigation, and any settlements required AB to first consult AMF. *Id.* If AB declined to pursue litigation, then AMF had a right to sue. *Id.* The court found AMF's right to sue substantial enough to find that AMF remained the owner of the patents-in-suit. *Id.* at 1363.

Medtronic Ireland concedes that *Mann* may have only dealt statutory standing, but the Court should consider the decision anyway as instructive. *See* ECF 153, at 10–11. Many courts have treated *Mann* as statutory standing case—with some declining to consider it in its constitutional standing inquiry. *See, e.g.*, *Lone Star*, 925 F.3d at 1229 (citing *Mann* in its statutory standing analysis); *Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 568 n.9 (N.D. Cal. 2020) (referring to *Mann* as a prudential standing case and concluding it "lack[ed] direct relevance" to the constitutional standing inquiry), *reversed on other grounds*, 52 F.4th 1352 (Fed. Cir. 2022); *Zydex*, 2024 WL 5276676, at *7 n.5 ("*Mann* does not concern constitutional standing.").

However, some courts have found *Mann* to be instructive even in the constitutional standing context. For example, in *Zebra*, the Federal Circuit analogizes to *Mann* for the proposition that a "shared ability to license while a default existed did not divest IT, the patent owner, of all exclusionary rights." *Zebra*, 101 F.4th at 816 (citing *Mann* in its constitutional standing analysis). *Zebra* uses *Mann* as a "see also" citation as an example of a patent owner retaining "rights" where the patent owner retained the right to sue. *Id.* However, *Zebra* does not cite *Mann* directly for the proposition that a secondary right to sue is an exclusionary right sufficient to establish Article III standing. *Id.*

Additionally, in *Ingenus Pharms., LLC v. Nexus Pharms., Inc.*, only the patent owner had a right to sue and *Mann* is cited for the analogy that a "fettered right to sublicense did not supplant [the] exclusionary right to sue." *Ingenus Pharms., LLC v. Nexus Pharms., Inc.*, No. 22-CV-02868, 2025 WL 1311271, at *3 n.2 (N.D. Ill. May 6, 2025) (acknowledging *Mann* as a statutory standing case but nevertheless finding it instructive in the constitutional standing inquiry). In *Ingenus*, the court did compare the patent owners' right to sue with the right to sue in *Mann* in the constitutional standing inquiry. *Id.* at *3. However, the patent owner's unfettered right to sue in *Ingenus* is distinguishable because, here, Medtronic Ireland's secondary right to sue is contractually separated from Medtronic Galway's exclusionary rights. Medtronic Ireland's right to sue is more analogous the plaintiff's secondary right to sue in *Zydex*.

The Federal Circuit has made clear the constitutional standing and statutory standing are separate inquiries. *See Lone Star*, 925 F.3d at 1229–36. Under this guidance, the Court finds *Mann*'s analysis of the right to sue to be more instructive for a statutory standing analysis rather than the instant constitutional standing inquiry.

After review of the relevant caselaw and the language of the ELA, the Court finds that, like in *Morrow* and *Zydex*, Medtronic Ireland's secondary right to sue, which is contractually separated from the right to exclude, is not sufficient to establish constitutional standing for its counterclaims.

**2. Medtronic Ireland does not retain any exclusionary rights under the ELA.**

Medtronic Ireland also asserts three more rights that it argues are sufficient to establish Article III standing. ECF 154, at 13. Medtronic Ireland first points to its right to veto any sublicenses by Medtronic Galway. *Id.* This veto right is limited as Medtronic Ireland cannot unreasonably withhold its consent to a sublicense. *See* ECF 139-2, Ex. A, § 2.4. Medtronic Ireland contends that its limited veto creates an exclusionary right. ECF 154, at 13; *see Lone Star*, 925 F.3d at 1232 (finding the licensor's sublicensing veto to be inconsistent with a transfer of all substantial rights); *Propat International Corp. v. RPost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (same). However, both cases cited by Medtronic Ireland considered the sublicensing veto in its statutory standing analysis—not in its constitutional standing analysis. The parties do not dispute that Medtronic Ireland is the patent owner.

United States District Court
Northern District of California

9

In contrast, in *Zydex*, the court considered an almost identical provision in which the licensee could sublicense its rights if it first provided the terms and conditions of any such sublicense to plaintiffs for their prior review and approval, for "which approval shall not be unreasonably withheld." *Zydex*, 2024 WL 5276676, at *4. Further, any sales made by a sublicensee shall be reported and royalty paid to plaintiffs as if licensee had made such sale. *Id.* The court held that plaintiffs did not retain an exclusionary right through its sublicensing veto. *Id.* at *5. The court reasoned that "reviewing terms and conditions of sublicenses does not involve exclusion" and because plaintiffs' approval cannot be "unreasonably withheld," there is no significant restriction of the scope of the exclusive licensee's rights to create an exclusionary right. *Id.*

Recor argues that none of Medtronic Ireland's cited cases support its position that a sublicense veto creates an exclusionary right. ECF 164, at 7. Further, *Zydex*, in an almost identical provision, finds that a sublicense veto is not sufficient restriction by itself to create an exclusionary right. *Id.* Medtronic Ireland fails to identify any authority to the contrary. *Id.* The Court finds the analysis in *Zydex* to be persuasive. Accordingly, Medtronic Ireland's sublicense veto is not sufficient to create an exclusionary right.

Medtronic Ireland next argues that it retains the right to limit Medtronic Galway's assignment of its rights under the ELA, as long as consent is not unreasonably withheld. ECF 154, at 13. However, Medtronic Ireland again only cites to *Propat*, a case that addressed statutory standing—not constitutional standing. *Id.* (citing *Propat*, 473 F.3d at 1191). The Court finds that its analysis for the sublicensing veto applies equally to Medtronic Ireland's assignment veto.

Finally, Medtronic Ireland points to its revisionary rights, arguing that it retains the right to terminate the agreement in the event of a material breach. ECF 154, at 14. The court in *Zydex* also dealt with revisionary rights. *Zydex*, 2024 WL 5276676, at *7. The court found that plaintiffs' right to terminate the agreement in the event of material breach was not sufficient to establish an exclusionary right, especially "given this ability to terminate is not exclusive to plaintiffs." *Id.* Similarly, here, the right to terminate in the event of a material breach is not

exclusive to Medtronic Ireland. *See* ECF 139-2, Ex. A, § 10.2. The Court finds that Medtronic Ireland's revisionary rights are not sufficient to establish constitutional standing.

Medtronic Ireland also argues that the ELA makes clear that the parties' intent was not to transfer all exclusionary rights from Medtronic Ireland to Medtronic Galway. ECF 154, at 15. Medtronic Ireland cites to its provisions that recognize its ownership in the Asserted Patents. *Id.* Medtronic Ireland again cites to *Mann* for its assertion that intent is relevant to the constitutional standing inquiry. *Id.* However, Medtronic Ireland against conflates the statutory standing inquiry in *Mann* with the constitutional standing inquiry before this Court. As stated previously, *Mann*'s analysis was conducted under the statutory standing context. While relevant to statutory standing, Medtronic Ireland's ownership in the Asserted Patents is not relevant to its retention of exclusionary rights for the purposes of Article III standing.

In its last argument, Medtronic Ireland argues that an allegation of monetary harm alone is sufficient for constitutional standing. ECF 154, at 15–7. In *Vericool World LLC v. TemperPack Techs., Inc.*, the district court held that "a party can suffer financial harm [sufficient for constitutional standing] from a patent infringer even if that party holds no exclusionary rights in the patent itself." 739 F. Supp. 3d 322, 334 (E.D. Va. 2024). The court, wary of the Federal Circuit's warnings against confusing the statutory and constitutional standing inquiries, held that the exclusionary rights doctrine was a product such confusion. *Id.* at 333. "At the heart of the exclusionary rights doctrine is the claim that a litigant has not suffered a judicially cognizable injury from infringement if that party cannot exclude others from the patent, which is to say, a party must have rights under the Patent Act to suffer an injury in fact." *Id.* Thus, the court reasoned that exclusionary rights doctrine itself conflated the statutory standing inquiry with the constitutional standing inquiry. *Id.*

*Vericool*'s approach is sharp turn in the exclusionary rights doctrine jurisprudence. Both parties agree that *Vericool* is the only district court to have suggested such an approach. *See also Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 WL 7122617, at *4 (N.D. Cal. Dec. 4, 2020) (Plaintiffs "argue that we should start from scratch with the bare injury-in-fact inquiry and dispense with the Federal Circuit's previous construction of the requirement in the patent

11

context, i.e. the requirement that a patent plaintiff possess exclusionary rights. This order disagrees. *Lexmark* and *Lone Star* do not require that we throw the baby out with the bathwater. They just require us to separate the inquiries of statutory right to sue and constitutional standing."). "[T]he *injury*—the concrete and particularized invasion of a legally recognized interest—requires a right to exclude others from practice of a claimed art." *Id.* (emphasis in original). In light of the Federal Circuit's longstanding exclusionary rights jurisprudence, the Court hesitant to apply *Vericool*'s reasoning here.

Medtronic Ireland also contends that the appellant in *Zydex* has argued *Vericool*'s approach on appeal and the court should stay the action until resolution of that appeal. ECF 154, at 16. The Court declines to do so. The Court finds that Medtronic Ireland has failed to establish an exclusionary right sufficient for Article III standing.

Because the ELA relinquishes Medtronic Ireland's exclusionary rights under the Asserted Patents to Medtronic Galway, the Court finds that Medtronic Ireland lacks Article III standing for its counterclaims. Accordingly, the Court **GRANTS** the motion to dismiss Medtronic Ireland's counterclaims without prejudice because Medtronic Ireland lacked standing to assert counterclaims at the time of filing. *Abraxis*, 625 F.3d at 1364.

**B.     Recor's declaratory claims are dismissed for lack of subject matter jurisdiction.**

Because Medtronic Ireland lacks constitutional standing to assert its counterclaims, the Court next turns to whether it has subject matter jurisdiction over Recor's declaratory claims of noninfringement and invalidity. *See* ECF 1 (the '629 patent), 35 (the '085 patent). Here, Recor argues that the Court should find that it lacks subject matter jurisdiction over its declaratory claims because no case or controversy exists. *See* ECF 174, at 2. Recor urges the Court to dismiss its claims. *Id.*

After the motion hearing, the Court ordered Recor to file administrative motion to voluntarily dismiss their declaratory judgment claims if the motion to dismiss is granted. ECF 177. The Court ordered both parties to address whether case or controversy still exists and whether joinder could cure Article III standing. *Id.* However, for the sake of judicial efficiency and because the Court has a duty to consider its subject matter jurisdiction *sua sponte*, Fed. R. Civ.

United States District Court
Northern District of California

P. 12(h)(3); *see Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), the Court now finds that an administrative motion regarding subject matter jurisdiction is unnecessary.

The proper test for subject matter jurisdiction in a declaratory relief action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Accordingly, for there to exist a case or controversy under Article III, "the dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' 'real and substantial,' and 'admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1335–36 (Fed. Cir.2008) (quoting *MedImmune*, 549 U.S. at 126).

"In order for a plaintiff to have standing in a declaratory action involving allegations of patent infringement, the defendant must have a legal right in the patent at issue that would allow the defendant to bring suit for infringement." *Top Victory Elecs. v. Hitachi Ltd.*, No. C 10-01579 CRB, 2010 WL 4722482, at *2 (N.D. Cal. Nov. 15, 2010) (citing *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998)).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). "This requirement remains constant at all stages of review, not merely at the time the complaint was filed." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 12709395, at *1 (N.D. Cal. Apr. 16, 2014) (citing *Benitec*, 495 F.3d at 1344).

Here, Recor, the party claiming declaratory judgment jurisdiction, abandons its burden, arguing that there is no actual controversy. ECF 174, at 2. Recor contends that because Medtronic Ireland does not have an exclusionary right sufficient to establish standing for its infringement counterclaims, the Court must dismiss Recor's declaratory judgment claims for lack of subject matter jurisdiction. *Id.*

United States District Court
Northern District of California

Recor cites to two cases. *Id.* In *Top Victory*, plaintiffs filed for declaratory judgment of non-infringement of seven patents. 2010 WL 4722482, at *1. The court addressed whether plaintiffs had met their burden to establish standing. *Id.* The court found that because at the time of filing, defendant was not "an owner, assignee, or exclusive licensee of the patents," plaintiffs lacked standing for its declaratory claims. *Id.* at *3.

Similarly, in *Newmatic Sound Sys., Inc. v. Magnacoustics, Inc.*, the court addressed whether plaintiff had standing for its declaratory judgment claims. No. C 10-00129 JSW, 2010 WL 1691862, at *2 (N.D. Cal. Apr. 23, 2010). The court found that because the complaint named only the subsidiary company of the patent owner and not the patent owner itself, plaintiff lacked standing to sue. *Id.* at *4.

The Court also finds *Linex* to be instructive. In *Linex*, plaintiff and some defendants stipulated to dismiss with prejudice some of plaintiff's infringement claims and defendants' corresponding declaratory claims for non-infringement. *Linex*, 2014 WL 12709395, at *1. The stipulation included plaintiff dismissing its infringement claims against defendants Aruba Networks, Inc. and Meru Networks, Inc. *Id.* However, Aruba and Meru did not join the stipulation to dismiss their corresponding counterclaims for declaratory judgment of noninfringement. *Id.* The court found that because plaintiff's infringement claims were dismissed, "[t]he substantial and immediate controversy identified by Aruba and Meru's counterclaims regarding the dismissed claims now no longer exists." *Id.* Thus, the court dismissed Aruba's and Meru's declaratory noninfringement counterclaims for lack of subject matter jurisdiction. *Id.*

Here, the Court found that Medtronic Ireland lacked constitutional standing to assert its counterclaims. Like in *Linex*, because Medtronic Ireland counterclaims for infringement were dismissed, no case or controversy exists. The Court finds that it lacks subject matter jurisdiction over Recor's declaratory claims of non-infringement and invalidity. Accordingly, the Court **DISMISSES** Recor's declaratory claims without prejudice.

United States District Court
Northern District of California

14

**C.    Motion for Joinder**

Pursuant to Federal Rule of Civil Procedure 19(a)(2), Medtronic seeks to join Medtronic Galway as Counterclaim-Plaintiff.  ECF 139, at 1.  "Article III standing is a jurisdictional requirement, which is *incurable* if absent at the initiation of suit."  *Zebra*, 101 F.4th at 814 (emphasis added).  While joinder may cure statutory standing, it cannot cure constitutional standing.  *Id.*

Because the Court finds that it lacks subject matter jurisdiction over this action, Medtronic's motion for joinder is **DENIED** as moot.

## IV.    CONCLUSION

For the reasons stated above and after considering the parties' oral arguments, the Court **ORDERS** the following:

1.    Recor's motion to dismiss Medtronic Ireland's counterclaims is **GRANTED** without prejudice for lack of constitutional standing.

2.    Recor's declaratory claims are **DISMISSED** without prejudice of lack of subject matter jurisdiction.

3.    Medtronic's motion for joinder is **DENIED** as moot.

This Order resolves ECF 139 and 144.  The Clerk of the Court is ordered to terminate the case.

**IT IS SO ORDERED.**

Dated: July 7, 2025

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

15